**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| KRISTY HAFFNER<br><br>Plaintiff,<br><br>v.<br><br>WILSON COUNTY, TENNESSEE; and JERRY MCFARLAND, in his individual capacity;<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. _________________<br><br>COMPLAINT<br><br>JURY DEMAND |

## INTRODUCTION

1. Plaintiff Kristy Haffner ("Ms. Haffner"), having received on August 20, 2026 a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"), brings this action alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); 42 U.S.C. § 1983; and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq*. ("THRA") against Defendant Wilson County, Tennessee ("Wilson County"), concerning Wilson County's gender-based discrimination; imposition of a hostile work environment; retaliation; and constructive discharge. Plaintiff alleges related violations of 42 U.S.C. § 1983 and Tennessee common-law defamation and infliction of emotional distress by Defendant County Commissioner Jerry McFarland ("Commissioner McFarland") in his individual capacity.

2. Ms. Haffner began working for Wilson County in July 2024 as Director of Wilson County Television ("WCTV") and worked there until July 2026, when she resigned after exhausting every other option to protect her safety, employment, and reputation from Wilson County's culture of sexism, harassment, and retaliation.

3. Ms. Haffner brought twenty years of award-winning broadcast journalism expertise to WCTV. In the course of her employment, she improved the quantity and quality of WCTV's programming output, increased the size of its staff, and doubled its online viewership.

4. Despite Ms. Haffner's excellent job performance, Wilson County subjected her to unchecked sexist verbal abuse, stalking, telephonic harassment, retaliation, defamation, and the threat of lethal violence from Commissioner McFarland as conditions of her employment.

5. Haffner and a number of concerned colleagues reported Commissioner McFarland's escalating behavior to Wilson County over a period of months, as McFarland abused his position to threaten Haffner's employment; stalk and incessantly call her; climbed through bushes to look into her office window; referred to her as his "girlfriend" and denigrated her abilities and appearance in professional settings; and in December 2024, closed the door to Haffner's office before informing her that he was carrying and handgun and warning her that, "I'm Jerry McFarland and I can do whatever the fuck I want."

6. In numerous recorded conversations between Haffner, Mayor Randall Hutto ("Mayor Hutto"), and County Attorney Michael Jennings ("Mr. Jennings"), Wilson County acknowledged Ms. Haffner's intolerable working conditions but disregarded its legal duty to investigate or remedy them.

7. Instead, after Haffner exercised her lawful rights by reporting the discrimination, Wilson County retaliated against her by refusing to intervene; discouraging her from exercising her legal rights and misinforming her as to those rights; reducing her decision-making authority; and imposing new and unjustified job requirements. Mayor Hutto advised Ms. Haffner that McFarland was an elected official who "wants what he wants," and a retired sheriff's deputy

working part-time for the finance department issued a memorandum concluding that McFarland should have continued and unfettered access to Haffner's non-public workspaces.

8. When Ms. Haffner pursued criminal charges against McFarland, Wilson County unlawfully ordered corroborative witnesses not to speak with Lebanon Police Department detectives and reportedly directed the county's deputy sheriffs not to enforce an Order of Protection imposed against McFarland by the General Sessions Court.

9. Commissioner McFarland, while testifying under oath to have that Order of Protection overturned, defamed Ms. Haffner by intentionally and falsely accusing her of losing or misappropriating county funds. McFarland repeated these falsehoods in a press release which he disseminated both electronically to the press and in person to Wilson County commissioners at a county commission meeting.

10. The years of discrimination and mistreatment from Commissioner McFarland, acquiesced to and authorized by Wilson County, as well as Wilson County's own discriminatory acts, strained Ms. Haffner's mental and physical health until the hostile work environment left her with no choice but to resign for the sake of her health, safety, and professional reputation.

## THE PARTIES

### A. Plaintiff Kristy Haffner

11. At all relevant times beginning in July 2024 and until July 31, 2026, Plaintiff Kristy Haffner was a female citizen of the United States and resident of Davidson County, Tennessee.

12. Today, Plaintiff Kristy Haffner is a resident of Clay County, Florida.

13. Ms. Haffner was an employee of Wilson County from July 2024 until July 31, 2026 within the meaning of all applicable statutes.

### B. Defendant Wilson County, Tennessee

14. Wilson County is a corporation and political subdivision of the State of Tennessee, organized and existing under and by virtue of the laws and Constitution of the State of Tennessee, and is subject to civil actions. Tenn. Code Ann. §§ 5-1-103, -105, *et seq*.

15. Wilson County at all relevant times owned, funded, and operated Wilson County Television ("WCTV") as a department or agency of Wilson County, with WCTV's offices and facilities principally located within that county's geographic boundaries.

16. During all relevant times, Defendant Wilson County was Ms. Haffner's employer within the meaning of all applicable statutes.

17. During all relevant times, Defendant employed more than five hundred (500) people.

18. At all relevant times, Randall Hutto was the duly elected mayor of Wilson County, was Wilson County's chief executive officer and a non-voting, *ex officio* member of the County Commission. *See* Tenn. Code Ann. § 5-6-101 *et seq*.

19. At all relevant times, Mayor Hutto was employed by Wilson County as its mayor, was acting in his official capacity, was acting under color of state law, and was acting within the scope of his employment with Wilson County.

20. The Wilson County Commission is the county legislative body; its members are "known individually as county commissioners and collectively as the board of county commissioners;" who "assembled are the representatives of the county and authorized to act for it." *Id*.

21. At all relevant times, Commissioner Jerry McFarland was a duly elected county commissioner of Wilson County and lawfully subject to and able to exercise all the duties, powers, rights and responsibilities accorded thereto.

22. Commissioner Jerry McFarland at all times relevant to this complaint claimed to possess the actual or apparent authority to take tangible employment actions against Ms. Haffner; possessed or acquired the actual or apparent authority to take tangible employment actions against Ms. Haffner through Wilson County's delegation, ratification, and/or acquiescence; and/or in the alternative, acted as a third party.

23. The County Attorney advises the county mayor and county legislative body as to their legal rights and responsibilities and represents the county's legal interests. *See* Tenn. Code Ann. § 5-6-112.

24. At all relevant times, Michael Jennings was employed as county attorney of Wilson County, was acting in his official capacity, was acting under color of state law, and was acting within the scope of his employment with Wilson County.

25. At all relevant times, Robert C. Bryan was the duly elected sheriff of Wilson County, chief executive officer of the Wilson County Sheriff's Office, and the most senior commanding officer of all deputy sheriffs within the Wilson County Sheriff's Office. *See* Tenn. Code Ann. § 8-8-213.

26. At all relevant times, Sheriff Bryan was employed by Wilson County as sheriff of that county, was acting in his official capacity, was acting under color of state law, and was acting within the scope of his employment with Wilson County.

27. William Michael Owen is, upon information and belief, a retired Wilson County chief deputy sheriff who at times relevant to this Complaint was employed by Wilson County as a consultant to its Finance Department.

28. At times relevant to this Complaint, Mr. Owen was employed by Wilson County, was acting in his official capacity, was acting under color of state law, and was acting within the scope of his employment with Wilson County.

**C. Defendant Commissioner Jerry McFarland**

29. Upon information and belief, Commissioner McFarland is and was at all relevant times a citizen of the United States, the State of Tennessee, and Wilson County.

## JURISDICTION AND VENUE

30. This Court has original subject matter jurisdiction over Plaintiff's causes of action pursuant to 28 U.S.C. §§ 1331, 1343, because they arise under the Constitution and the laws of the United States, including 42 U.S.C. § 2000e, *et seq*. ("Title VII") and 42 U.S.C. § 1983.

31. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's causes of action arising under Tennessee law because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

32. Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391(a) because all Defendants reside in the State of Tennessee and at least one of the Defendants resides in the Middle District of Tennessee.

33. Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in Wilson County and Davidson County, Tennessee, which are both in the Middle District of Tennessee.

34. On March 10, 2026, Ms. Haffner timely filed a Charge of Discrimination (the "First Charge") jointly with the Tennessee Human Rights Commission and EEOC, alleging violations of Title VII and the THRA.[1]

35. On July 29, 2026, Ms. Haffner timely filed a second Charge of Discrimination ("Second Charge") jointly with the Tennessee Human Rights Commission and EEOC, alleging further violations of Title VII and the THRA occurring after the filing of the First Charge.[2]

36. Both Charges are based on the same facts that gave rise to the claims in this Complaint. On August 20, 2026, Ms. Haffner received a Notice of Right to Sue as to each Charge from EEOC.[3]

## FACTUAL ALLEGATIONS

37. Plaintiff Kristy Haffner was hired as Director of Wilson County Television ("WCTV") in July 2024. Over her 20-year career in broadcast journalism, Ms. Haffner has been an on-camera host and news producer in the Nashville media market, a news anchor, executive producer, and the winner of prestigious Cynopsis and Cablefax awards. Ms. Haffner holds a bachelor's degree in broadcast journalism and a master's degree in business communication, and her technical expertise encompasses the operation of camera, mixing, and editing equipment; as well as publishing online and social media content.

38. Ms. Haffner took over leadership of WCTV after its previous director and Commissioner McFarland's associate, Tressa Bush, was fired for using racist language in the workplace.[4] Under Ms. Haffner's leadership, WCTV substantially increased its output of new programming and online viewership. Mayor Hutto consistently praised her work, which was also

---

[1] A copy of Ms. Haffner's first EEOC Charge of Discrimination is attached as Exhibit 1.
[2] A copy of Ms. Haffner's second EEOC Charge of Discrimination is attached as Exhibit 2.
[3] Copies of both Notice of Right to Sue letters are attached as Exhibits 3 and 4.
[4] *See Bush v. Wilson County, Tenn.*, Chancery Court for Wilson County, Tenn., Case No. 2024-cv-103.

positively reviewed by Nashville's PBS affiliate, and Ms. Haffner hoped to continue running WCTV for many years until her retirement. Instead, Wilson County allowed its productive new employee to be serially harassed, abused, and threatened without recourse.

## I. Wilson County Maintains a Hostile Work Environment in which Commissioner McFarland is Permitted to Discriminate Against and Stalk Ms. Haffner with Impunity.

39. From the first months of Ms. Haffner's employment and on a continuous basis up to the point of her resignation, Wilson County discriminated against Ms. Haffner and subjected her to a hostile work environment, enabling male Wilson County Commissioner Jerry McFarland to stalk, harass, threaten, and defame Ms. Haffner. Despite reports by Ms. Haffner and other county employees that McFarland was on a nearly daily basis calling Haffner, demanding entry to her secure and non-public work areas, loitering in those work areas, watching her from a nearby parking lot, and demeaning her appearance and job performance with sex-based language, and on other occasions referred to her as his "girlfriend" and brought a firearm into her office, Wilson County refused to intervene as both law and internal policy required.

### A. Commissioner Jerry McFarland Begins to Stalk, Harasses, Threaten, and Discriminate against Ms. Haffner.

40. Ms. Haffner's office was located at 220 E. Gay St. in Lebanon, TN (the "WCTV building"); a small, single-story building that houses WCTV and Wilson County's Information Technology Department ("I.T."). The WCTV building was and is a locked building, not open to the public, which can be entered only by using a key fob or entry code issued by Wilson County.

41. Ms. Haffner also regularly worked at a small WCTV control area within the historic Wilson County Courthouse ("the Courthouse"), which currently houses the County Commission meeting room, the Mayor's office, Finance Department, and other government offices. The Courthouse is located at 228 E. Main St., Lebanon, TN, diagonally across the street from the

WCTV building. Ms. Haffner was regularly present in the control area during Commission meetings and other county meetings, which she recorded and uploaded for WCTV.

42. Immediately upon Ms. Haffner's arrival at WCTV in July 2024, Commissioner McFarland began to visit her, both in her office at the WCTV building and her workstation in the Courthouse. McFarland visited Ms. Haffner's office on a nearly daily basis—between four to six times per week—in contrast to all other Wilson County commissioners, who almost never came to the WCTV building.

43. Commissioner McFarland performed these visits under the color of his government office and authority, with the ostensible purpose of discussing WCTV's operations, its budget (which he influenced and voted on as a Commissioner), and his many suggestions for WCTV content. McFarland would extend his unscheduled, unsolicited visits by frequently using the women's restroom, placing phone calls unrelated to WCTV business, and loitering in and around Ms. Haffner's office and person for no legitimate government purpose.

44. Commissioner McFarland at no relevant time possessed a key fob or entry code to enter the WCTV building. McFarland would ring the doorbell to request entry, and if he did not receive a response, would repeatedly ring the bell and call Ms. Haffner's phone.

45. Ms. Haffner initially tolerated Commissioner McFarland's behavior because she believed he served on the County Commission's Cable TV & Broadband Committee, which oversees WCTV's operations. In fact, McFarland did not serve on that Committee.

46. Commissioner McFarland was also—multiple times a week and on a continuous basis from July 2024 and up to the time of Ms. Haffner's resignation—observed by Ms. Haffner and other Wilson County employees parked at the post office next-door to the WCTV building,

watching the WCTV building's small parking lot and entrance. McFarland would at times remain parked there for an hour or longer.

47. Up to the end of 2024, Commissioner McFarland's visits were sufficiently frequent and well-known that they were the subject of supposedly "joking" exchanges between Ms. Haffner and the mayor's office. On one occasion, Mayor Randall Hutto and his staff sent Ms. Haffner a homemade greeting card which featured the "poop emoji" commonly used in modern text-messaging platforms, an image of a dinosaur defecating labeled with the words "scratch + sniff," and the signature "Randall" beneath the words "Sh__ happens you know!" (Redaction original.) On September 18, 2024, Ms. Haffner sent an email to Labraunya Horton, the Deputy Finance Director of Wilson County, noting that Commissioner McFarland had visited on four consecutive days, which was fairly typical of the time period.

48. Commissioner McFarland also relentlessly contacted Ms. Haffner by phone. McFarland called Haffner one hundred and twenty-one (121) times in the six-and-a-half-month period between July 22, 2024 and February 11, 2025, when Haffner ultimately demanded that McFarland stop calling her. In the same time period, Haffner called McFarland only 36 times and sent him 10 text messages—the vast majority of those calls being placed only in response to an initiating call from McFarland.

49. If Haffner did not answer, McFarland would sometimes call repeatedly within the span of a few hours. He called at inappropriate times (e.g., 5:40 a.m., 9 p.m.) and made inappropriate requests, including for her to visit his home.

50. Over the course of 2024, Commissioner McFarland routinely demeaned Ms. Haffner in gender-based terms. McFarland, who is approximately thirty (30) years older than Ms. Haffner, inaccurately introduced Ms. Haffner to others as his "girlfriend" five or six times between

June 2024 and February 11, 2025, including in professional settings. When Ms. Haffner mentioned her actual boyfriend, McFarland on multiple occasions told her to "Stop telling me you have a boyfriend; I don't want to hear about it" or words to that effect. On one such occasion, after being corrected by Ms. Haffner, Commissioner McFarland angrily told her to "shut up."

51. Commissioner McFarland routinely made gender-based discriminatory remarks regarding Ms. Haffner's appearance and professional abilities. McFarland would comment favorably on Ms. Haffner's appearance when she was "dressed up" and wearing makeup, but would denigrate her appearance when she wore more casual clothing or did not wear makeup. Upon seeing Ms. Haffner operate video equipment—an area in which she has extensive experience and training, and he does not—McFarland remarked derisively that she was a "modern woman." On another occasion, when Ms. Haffner showed McFarland some WCTV social media content she had made, he asked her "which one of the guys" had filmed the footage. On multiple occasions when Ms. Haffner tried to explain to Commissioner McFarland that his comments were disrespectful, he told her that he liked "feisty women."

52. From the Summer to Winter of 2024, Commissioner McFarland's communications to Ms. Haffner became increasingly abusive. He continuously demanded that Haffner film and broadcast subjects of his choosing. When she refused—exercising her editorial prerogative as WCTV Director—he began to insult and threaten her.

53. Commissioner McFarland routinely threatened Ms. Haffner's employment and department funding under the color of his elected office. McFarland told Haffner on countless occasions that if she did not do as he asked, he had the power as a county commissioner either to have her fired or to "defund" WCTV and her position. He routinely bolstered these threats by describing to her his wealth and influence in Wilson County, telling her that he had been

responsible for the Commission's creation of WCTV, had donated land to the county, and that the McFarland Hospital building in Lebanon had been named for his father. McFarland's threats, intimidation, and self-aggrandizement became a constant in his communications to Haffner.

54. On more than one occasion, when Ms. Haffner agreed to go to lunch with Commissioner McFarland to discuss WCTV projects or to see a prospective shooting location, McFarland would drive her to additional, unplanned locations. On or about August 29, 2024, he pressured Ms. Haffner to go with him to Watertown, Tenn., to film a train "turntable." He then drove her, along with two men she did not know, nearly an hour away to Nashville to film a steam engine. Ms. Haffner found the trips bizarre and shocking, but did not complain out of fear of McFarland's previous threats.

55. As a result of Commissioner McFarland's behavior and the fear it caused Ms. Haffner, Ms. Haffner's colleagues in the I.T. department began escorting her to her vehicle after evening meetings.

### B. Wilson County Ignores Ms. Haffner's Pleas for Help, and Commissioner McFarland Threatens Her with a Firearm.

56. Beginning in November 2024, Ms. Haffner and her coworkers began reporting Commissioner McFarland's misconduct to Wilson County, hoping to establish a workplace free of his abuse.

57. Ms. Haffner on November 18, 2024 met with Mayor Hutto and reported that Commissioner McFarland had made sexist and racist remarks and was "trying to control" her through his unreasonable visits, phone calls, and demands for attention. Mayor Hutto initially appeared supportive, telling Ms. Haffner that he was "as happy as I can be" with her work; assuring her that she answered to the mayor's office and not to McFarland; and advising her on how to refuse McFarland's unreasonable requests.


Case 3:26-cv-01680 Document 1 Filed 10/22/26 Page 12 of 46 PageID #: 12

58. On December 3, 2024, Commissioner McFarland repeatedly rang the doorbell for entry to the WCTV building before climbing through a bush to look into Ms. Haffner's first-floor office window. Ms. Haffner reported this incident to Mayor Hutto:

> **From:** Kristy Haffner <Kristy.Haffner@wilsoncountytn.gov>
> **Date:** Tuesday, December 3, 2024 at 1:39 PM
> **To:** Randall Hutto <huttor@wilsoncountytn.gov>
> **Subject:** He's back
>
> I just wanted to let you know that's he's back at it today. He has called 4 times, done drive-by's of the parking lot at least 2x times, rang the doorbell frantically 4-7 times- and (attempted) to peek over a bush to look into my office window!!! It's only 1:30.
>
> Yes, I have logged all of this. I just wanted to give you an update after our conversation yesterday. Apparently, he is back to obsessing over me.
>
> Kristy Haffner
> Director, Wilson County Television
> 615.918.3375

59. Wilson County took no action.

60. Within days of the December 3rd incident, Commissioner McFarland entered Ms. Haffner's office, closed the door behind him, and told her that he was carrying a firearm and did so routinely. When Ms. Haffner advised McFarland that firearms were not allowed in the WCTV building, McFarland responded: "I'm Jerry McFarland and I can do whatever the fuck I want."

61. In light of Commissioner McFarland's recent displeasure toward her and the unexpected nature of the comment, Ms. Haffner reasonably interpreted the statement as a threat.

62. Ms. Haffner immediately ran down the hall and told her colleague in I.T., Aaron Wilson, what had happened.

63. On December 30, 2024, Mr. Wilson reported the firearm incident to Human Resources, expressing concern for Ms. Haffner's safety as well as his own:

**From:** Aaron Wilson <aarondwilson@wilsoncountytn.gov>
**Sent:** Monday, December 30, 2024 11:10 AM
**To:** Kristy Haffner <Kristy.Haffner@wilsoncountytn.gov>; Ken Hammonds <kenneth.hammonds@wilsoncountytn.gov>; Cory Watson <corywatson@wilsoncountytn.gov>; William Sabaski (Billy Joe) <William.Sabaski@wilsoncountytn.gov>; Justin Tart (Emmy Nominee) <Justin.Tart@wilsoncountytn.gov>
**Cc:** Qiana Scruggs <Qiana.scruggs@wilsoncountytn.gov>; Bethany Massey <masseyb@wilsoncountytn.gov>
**Subject:** Safety Concern

Morning,

I am writing to address a matter of personal safety and professional concern regarding County Commissioner Jerry McFarland.

I have been made aware that Commissioner McFarland has disregarded the posted sign on our building's entrance stating that weapons are not allowed. Additionally, based on my prior interactions with him, I feel it is important to share my concerns:

- Commissioner McFarland has a history of publicly attacking my character.
- He has made public declarations of wanting to eliminate the IT department by any means possible.
- Reports have reached me of him making racist and sexist comments.
- I have personally witnessed him abusing the power of his position as a county commissioner.

Given these factors, and the fact that Commissioner McFarland openly expresses disdain for me, I do not feel safe being in a confined space with him.

Furthermore, I must share that I have no faith that the County would take meaningful action to protect me in the event that Mr. McFarland were to utilize a firearm or any other weapon in this building. I also have no confidence that, should I ever be forced to defend myself against an attack from Mr. McFarland, the County would accept or consider any facts beyond those presented by him. Additionally, I lack trust in the reliability and integrity of the surveillance system, which is controlled and monitored by a third party, to provide an accurate and impartial account of any incidents.

For these reasons, I respectfully ask that we collectively refrain from inviting or hosting Commissioner McFarland in our building unless absolutely necessary. In instances where his presence is unavoidable, I request to be notified in advance so that I can take advantage of the County's Alternative Workplace policy to ensure my safety and peace of mind.

Thank you all for your understanding and cooperation in this matter. My sole intention is to create an environment where I feel secure while carrying out my responsibilities. Please let me know if you have any questions or require further clarification.

Aaron

Get Outlook for iOS

64. Even with McFarland's conduct clearly escalating, Wilson County took no action.

### C. Ms. Haffner Tells Commissioner McFarland to Stop Calling Her and Formally Requests County Action.

65. On February 11, 2025, Commissioner McFarland called Ms. Haffner and invited her to lunch, again referring to her as his "girlfriend." Ms. Haffner unambiguously told McFarland to stop calling her on the phone and to stop calling her his girlfriend, then hung up on him.

66. The following day, Ms. Haffner by e-mail relayed the conversation to Ms. Scruggs, pointing out that Commissioner McFarland had attended sexual harassment training and knew his behavior to be wrong. She also expressed her fear of McFarland's reprisals, telling Scruggs:

> "He also knows that it is inappropriate to call the director of a department daily and make demands about how they should do their job. Speaking up for myself has no effect on him. In fact, I believe it makes him want to control me even more. I do not feel that I can say anything again without backlash."

67. The calls did not stop. Commissioner McFarland called Ms. Haffner thirteen (13) times between February 11, 2025 and May 14, 2025. His voicemails did not specify any work-related business, but merely repeated his demand—over and over again—that Ms. Haffner call him back. Ms. Haffner did not return these calls. On April 30, 2025, after McFarland had, upon information and belief, been advised that Ms. Haffner was hiring an attorney to deal with the situation, McFarland left her a message asking to take her to lunch and "re-establish our relationship."

68. Aaron Wilson also continued reporting Commissioner McFarland's misconduct. On February 6, 2025, Mr. Wilson reported to H.R. that Commissioner McFarland had called him a "faggot" after seeing him wearing a pink shirt. On February 25, 2025, Mr. Wilson reported that he had seen McFarland "linger" in the Courthouse control area asking another employee where Ms. Haffner was and telling that employee that Ms. Haffner was not qualified for her job and did

not perform her daily responsibilities. Mr. Wilson in his email expressed concern regarding McFarland's "stalking and sexual harassment" of Ms. Haffner:

**From:** Aaron Wilson <aarondwilson@wilsoncountytn.gov>
**Sent:** Tuesday, February 25, 2025 4:43 PM
**To:** Qiana Scruggs <Qiana.scruggs@wilsoncountytn.gov>
**Cc:** Kristy Haffner <Kristy.Haffner@wilsoncountytn.gov>
**Subject:** Concern Regarding Observed Conversation with Commissioner McFarland

Qiana,

I want to bring to your attention a troubling situation I witnessed on Friday involving Commissioner McFarland and Ms. Becky. Commissioner McFarland lingered in the PEG control area and, after I stepped into the MDF (equipment) room, approached Ms. Becky to ask about Ms. Kristy's whereabouts. He went on to insist that Ms. Kristy was not qualified for her position and questioned whether she actually worked for the County or performed her daily responsibilities.

This conversation was especially concerning to me because I am aware of the ongoing issues involving Commissioner McFarland's behavior toward Ms. Kristy, including stalking and sexual harassment. Hearing him belittle her quali Email content ront of another employee seemed wholly inappropriate for an elected official and added to my discomfort, given his previous conduct.

I felt it was important to share my observations with you. If you have any questions or need further details, please let me know. Thank you for your time and consideration in addressing this matter.

Keep innovating,

**Aaron Wilson**
*Information Technology Manager*
**Wilson County Government**

### D. Choosing to Protect McFarland, Wilson County Imposes New Work Requirements on Ms. Haffner and Conducts a Sham Investigation.

69. Almost immediately after Ms. Haffner on February 11, 2025, told Commissioner McFarland to stop calling her, Mayor Hutto in late February ordered Ms. Haffner to provide monthly reports detailing the new WCTV content she had produced, in order to defend her job against McFarland's attacks. This new, labor-intensive task was not required of similarly situated male employees and was unjustified by Ms. Haffner's exceptional job performance. In a March 3, 2025, email to Mayor Hutto, Ms. Haffner noted that WCTV was experiencing a "massive increase in views and followers on social media" under her leadership.

70. Around the same time, Wilson County purported to investigate the situation—not through the Human Resources Department, Police Department, Sheriff's Office, Tennessee

Bureau of Investigation, Tennessee Human Rights Commission, U.S. Equal Employment Opportunity Commission, or an independent auditor—but by assigning part-time Finance Department "consultant" and retired Chief Deputy Sheriff Mike Owen to look into Ms. Haffner's allegations. Mr. Owen interviewed Ms. Haffner, Commissioner McFarland, and Mayor Hutto, but not a single one of the known, corroborative witnesses in the I.T. department. He did not record his interviews.

71. In an undated document titled "Memorandum for Record" and with no listed recipient, Owen wrote of Ms. Haffner: "The first observation is that her appearance appears to be somewhat in disarray. Her hair was unkept eyes swollen and a genuine look of unkept with stress and tension in facial expressions." Owen wrote no physical descriptions of his other, male interviewees Mayor Hutto and Commissioner McFarland.

72. Owen, who is neither an attorney nor human resources professional, but was acting as a designated agent and representative of Wilson County, instructed Ms. Haffner that he did "not believe human resources has any control over a county commissioner's actions …" and that:

> "A Commissioner not only has a right but an obligation to pursue answers relating to all county employees and officers within their scope of committees. Commissioner McFarland has a right to be at any county property or visit any county office as any citizen of this county. He must be afforded that right."

73. Owen offered no help. He instructed Haffner to directly confront Commissioner McFarland herself, which she had already done, and to tell him "what you see as inappropriate communication or behavior that makes you uncomfortable and cease immediately. If he is not satisfied with your work performance, refer him to your supervisor."

74. Ms. Haffner did so, again. In a pair of meetings on March 3 and March 5, 2025, Haffner provided Mayor Hutto, Ms. Scruggs, and (at the March 5 meeting only) Mr. Jennings an exhaustive account of Commissioner McFarland's discriminatory misconduct and the names of

corroborative witnesses. Ms. Haffner described Commissioner McFarland's incessant calls, including on weekends and holidays; his office visits and "drive-bys;" his threats and references to his political power (i.e., "I bought this [WCTV] building, why is this door locked"); calling her his "girlfriend;" watching her from the post office; climbing through the bushes; and waiting until she was isolated from other people to verbally abuse her.

75. In these meetings, Ms. Haffner explicitly told the Wilson County officials that Commissioner McFarland "makes me feel unsafe" at work; and "makes me feel uncomfortable in a very—in a sexual way. I really, really believe that he wants to sleep with me and he's sexually inappropriate." She stated that his actions made her "nervous to walk out to my car" such that male coworkers in I.T. had begun to escort her out.

76. Mayor Hutto and Mr. Jennings validated Ms. Haffner's concerns and agreed that McFarland had no direct supervisory authority over her, but they denied any ability to intervene. Hutto authorized Haffner to ignore McFarland's calls and found McFarland's behavior alarming enough to suggest installing a "panic button" in Haffner's office, though he never did so. He advised Haffner to continue having I.T. employee Corey Watson escort her out of the building—a measure that had already proven ineffective at stopping McFarland's behavior and was far outside of Mr. Watson's job requirements.

77. Mr. Jennings told Ms. Haffner that Wilson County could not take any action because McFarland was an elected official. Jennings further disclaimed both his and the County's legal responsibilities by recommending that Haffner seek help from someone *outside* of Wilson County government to address Commissioner McFarland's behavior. Hutto agreed and, expressing his own fear of retaliation from McFarland, directed Haffner to tell McFarland that "an independent person," rather than Hutto, had advised her not to answer McFarland's calls.

78. Subsequent meetings were no more productive. In a March 22, 2025 meeting, Ms. Haffner again told Mayor Hutto that "Jerry is stalking me"; that the I.T. staff shared her concerns; and that McFarland interfered with her work and sometimes grabbed equipment he did not know how to use. Haffner in the same meeting objected to the progress reports Hutto had begun requiring her to submit to satisfy McFarland. Haffner pointed out that McFarland had been supportive of her work until she had told him to stop calling her his girlfriend, and that the reporting requirement played into McFarland's hand because, "You're questioning my ability to do my job, now I'm in here every day defending my job."

79. Mayor Hutto now reversed the concern he had shown Ms. Haffner in the previous meetings. He told her that Commissioner McFarland cared about her, had a long-standing interest in WCTV, and that as a County Commissioner, "he wants what he wants."

### E. "I'm Seeing You Unload Your Car": Wilson County Leaves Ms. Haffner to Fend for Herself Against Commissioner McFarland's Continued Stalking into the Summer of 2025.

80. Ms. Haffner and her colleagues continued to report Commissioner McFarland's misconduct with no action by the county.

81. On May 12, 2025, Corey Watson reported to his supervisor in I.T. a May 6th incident in which McFarland had asked him "frequent questions about Director Haffner which was very awkward." Watson would later testify that McFarland had asked him about Haffner's whereabouts approximately every 5 minutes during the 30-minute conversation, and that he found the questions disturbing.

82. On May 12 and May 14, 2025, Commissioner McFarland called Ms. Haffner from his vehicle as he sat in the post office parking lot watching her office. In the May 14th voicemail, McFarland stated that he was that moment "over here at the post office" and "seeing you unload your car." The post office parking lot is approximately 50 feet from the WCTV parking lot.

83. In a conversation with Mayor Hutto on or about May 26, 2025, Ms. Haffner reported McFarland's continued stalking behavior. Hutto told Haffner that she did not need to worry because McFarland had a girlfriend and was not sexually interested in Haffner. He further advised Ms. Haffner to assign a newly hired WCTV camerawoman to film whatever McFarland wanted. When Haffner said she refused to send a woman with McFarland, Hutto told her to hire a white male.

84. On May 27, 2025, WCTV employee William Sabaski memorialized in an email that Commissioner McFarland had "at least 5 to 10 times in my presence within the last four months (if not possibly more)" entered the WCTV control area in the Courthouse and asked about Ms. Haffner's whereabouts, and had done so again at a public workshop in Watertown. Sabaski described McFarland's inquiries as "persistent" and "intrusive," the "frequency and pointed nature" of which made him "uncomfortable."

85. On May 28, 2025, Ms. Haffner advised Ms. Scruggs about McFarland's May 14th voicemail and his complaints about her to Hutto, and stated that Hutto's new reporting requirements were time-consuming and retaliatory.

**From:** Kristy Haffner <Kristy.Haffner@wilsoncountytn.gov>
**Sent:** Wednesday, May 28, 2025 9:48 AM
**To:** Qiana Scruggs <Qiana.scruggs@wilsoncountytn.gov>
**Subject:** Last week

I was asked by Mayor Hutto last week to meet with him and Mike Owen, which I did. As I verbally told you, Commissioner McFarland left me a disturbing message that he was watching me unload my car. That was the second time that week he parked across the street to watch me. When I did not answer, McFarland called the mayor to complain about the work that I am doing. McFarland left the mayor several voicemail messages on his cell phone slandering me. The mayor played me 2 of these messages during a mtg last Thursday on May 22nd.

I was asked to meet with mayor Hutto unexpectedly at the end of the day on Thursday and he asked me to submit everything I have done and filmed over the last 5 months.

I am scheduled to meet with Mike Owen and Mayor Hutto today. I will submit my work, but I want to note that this report has taken a significant amount of time. I consider the mayors actions retaliation against me.

I would like you to put this in my file and keep this confidential.

Additionally, I would like to restate that I am afraid of Commissioner McFarland, especially since he blatantly admitted to watching me in a voicemail on 5/14. McFarland also watched me on 5/12 as I entered the building and left me a message on that occasion as well.

There is nothing I need you to do right now, please put this in my file. If anything happens to me I want it on the record. I fear when an official complaint is filed Commissioner McFarland's unstable behavior may take a turn towards violence.

Kristy Haffner
Director, Wilson County Television
615.918.3375

86. In a May 28, 2025 meeting between Haffner, Hutto, and Scruggs, Ms. Scruggs agreed that McFarland's true goal was access to Ms. Haffner, and suggested that the County have a third party evaluate the quality of WCTV programming. This idea resulted in a review of WCTV programming by Nashville's PBS affiliate, whose representative wrote:

> "I just wanted to say how truly impressed I am with what you all have done with this channel so far in Wilson County as compared to what I've seen done in many other government and university-run organizations ... Congratulations again for a job well done!"

87. In a May 30, 2025, meeting, Hutto told Haffner that McFarland could not be interested in her because McFarland had just shown Hutto a picture of his new girlfriend. During the meeting, Hutto received text messages from McFarland about Haffner, prompting Haffner to point out that "You just had a conversation with him and he's stalking me through you."

88. In the same meeting, Hutto admitted that Commissioner McFarland had threatened the WCTV budget, and that Hutto had warned McFarland that "[if you] get rid of that TV budget and then they'll really barbecue your butt in court." Haffner advised Hutto that McFarland had

similarly threatened Corey Watson that he was going to "defund" the I.T. department. Hutto advised her that such statements were within Commissioner McFarland's right to free speech.

89. On June 3, 2025, Corey Watson and William Sabaski again saw Commissioner McFarland sitting in the post office parking lot looking at the WCTV building. Later that night, McFarland visited the WCTV control room and asked Mr. Watson about Ms. Haffner's whereabouts.

90. On June 10, 2025, Commissioner McFarland saw Ms. Haffner in the Courthouse and followed her down a hallway until Ms. Haffner went into to Commissioner Lauren Breeze's office. On June 16, 2025, McFarland came back to the WCTV control room at the courthouse looking for Ms. Haffner, but left when he saw Ms. Haffner was not alone. On June 23, 2025, McFarland was observed by an employee again parked in the USPS post office facing Ms. Haffner's office.

91. On June 30, 2025, Mayor Hutto further capitulated to Commissioner McFarland by ordering Ms. Haffner to provide McFarland the personal phone number of a WCTV employee. He further directed her to film a public information session with the Army Corps of Engineers, which Ms. Haffner did not believe was authorized by the County Commission and which was "frowned upon" by the Corps itself. Ms. Haffner reported the incident to Human Resources, noting her belief that the filming project was "a ploy for McFarland to try to get me alone in the control room," as he had recently and repeatedly been observed trying to do by Mr. Watson and Mr. Sabaski.

**From:** Kristy Haffner
**Sent:** Monday, June 30, 2025 2:56:31 PM
**To:** Qiana Scruggs <Qiana.scruggs@wilsoncountytn.gov>
**Subject:** Mtg tomorr[illegible] Email content [illegible]e

I am being forced to film a meeting for Jerry McFarland- a watershed public session, on July 1.

Mayor Hutto had Sara call and tell me late this morning.

This meeting is not part of what is supposed to be filmed by WCTV, according to resolutions passed by the County Commission stating what meetings are covered. I informed Sara that the Army Corp of Engineers normally frowns upon this.

Additionally, this is a meeting that McFarland wants filmed. (yet he complains that I have too many meetings on the channel) We are catering to one commissioner and violating rules that McFarland voted on.

Filming this meeting will take about 4 hours away from my employee's normal duties.

I feel this is a ploy for McFarland to try to get me alone in the control room. Additionally, my employees do not feel comfortable with Commissioner McFarland coming into the control room- which he did during the last meeting. I had someone walk me to my car because I was so creeped out. I have his control room visit on camera- he stood behind a cabinet watching me, clearly waiting for the men in the room to leave so he could be alone with me.

Additionally, I was contacted by the Mayor's office (again) about giving my employees personal phone number to Jerry. I have contacted Mike Jennings to advise me on this matter.

Please add this to my file, as I want to document another instance of Mayor Hutto enabling and empowering my stalker, all why ignoring my safety.

92. Even after Ms. Haffner obtained an *ex parte* Order of Protection against Commissioner McFarland on July 2, 2025, the commissioner on July 17, 2025 at approximately 8:30 a.m., loitered in the Courthouse kitchen, directly beside the WCTV control area and at a distance of approximately twenty (20) feet from Ms. Haffner.

**F. Ms. Haffner's Pleas to Law Enforcement are Ignored and Obstructed and by Wilson County.**

93. On May 27, 2025, Haffner met with Assistant District Attorney General Tammy Meade and D.A. investigator William "Billy" Sharer to request Commissioner McFarland be criminally prosecuted for stalking and harassment.

94. On June 2, 2025, Ms. Haffner filed a petition for an Order of Protection with Judicial Commissioner Corey Buhler. Buhler—who is not licensed to practice law—inaccurately advised Ms. Haffner that Orders of Protection could only be issued between spouses or members of the same household. Commissioner Buhler further advised Ms. Haffner against retaining counsel to pursue her petition.

95. The incorrect, “spouse or household” requirement was repeated to Ms. Haffner by Wilson County Juvenile Court Judge C. Barry Tatum in a separate conversation. The repetition of this falsehood by Buhler and Tatum is noteworthy considering the brevity and clarity of Tennessee’s order of protection statutes, and the relevance of those statutes to the work of both judicial commissioners and juvenile court judges.

96. On June 2, 2025, Ms. Haffner filed a report with the Lebanon Police Department alleging that Commissioner McFarland had criminally stalked and harassed her.

97. When Det. Jason Bringhurst began investigating that report, Mr. Jennings in his official capacity as County Attorney ordered Wilson County employees not to speak with police about Ms. Haffner’s allegations unless they were subpoenaed to do so. Such a directive, which served no apparent purpose beyond delaying the police investigation, had upon information and belief not been given a few months earlier, when law enforcement had sought to interview Wilson County employees about unrelated thefts allegedly committed by former Wilson County I.T. Director Kenneth Hammonds.

98. Wilson County Emergency Management Agency (“WEMA”) was similarly uncooperative to a FOIA request Ms. Haffner made in January 2025. Ms. Haffner’s request for Commissioner McFarland’s employment records with that agency—specifically for any reports of misconduct and the basis of his termination from that agency—has to this day gone unanswered.

99. On October 5, 2025, while the General Sessions Court’s full Order of Protection was in effect, Ms. Haffner’s fiancé Steve Gatlin, a former police officer, reported a suspicious van parked facing the parking lot and entrance of the WCTV building for approximately thirty minutes. Mr. Gatlin immediately reported the vehicle to a Wilson County sheriff’s deputy, who told Gatlin that “he had been instructed to stay out of the case involving Kristy Haffner and Jerry McFarland.”

100. Other, similar reports to the Wilson County Sheriff were likewise ignored.

101. On April 20, 2026, after I.T. employees had begun locking the door to the Courthouse control area for the express purpose of keeping Commissioner McFarland out, Sheriff's Deputy Craig Anderson demanded without lawful authority that I.T. employee Corey Watson provide Commissioner McFarland with a key to that area. On the same evening, McFarland disseminated a defamatory press release about Ms. Haffner, discussed below.

### G. Commissioner McFarland Intentionally Defames Ms. Haffner and Perjures Himself by Making False Accusations of Theft.

102. In retaliation for Ms. Haffner's reports of his misconduct, Commissioner McFarland under the color of his elected office defamed Ms. Haffner by intentionally and falsely accusing her of financial misconduct and/or theft.

103. After Ms. Haffner was on July 24, 2025, granted a full Order of Protection against Commissioner McFarland, McFarland appealed and a Circuit Court hearing was held February 25 to 26, 2026.

104. At that public hearing, Commissioner McFarland testified that his persistent attempts to contact Ms. Haffner over a period of approximately six months, both by phone and in person, were made in his official capacity and for the government purpose of investigating $60,000 in county funds allocated to WCTV which McFarland claimed were unaccounted for. At the time the funds McFarland referenced had been allocated, Ms. Haffner was the only employee of WCTV.

105. Commissioner McFarland did not, and cannot, provide any evidence to support this false allegation, which was contradicted by every witness who was questioned on the topic. Wilson County Deputy Finance Director Labraunya Horton, Human Resources Director Qiana Scruggs, Finance Department Investigator Mike Owen, Wilson County Commissioner Bobby Franklin (who chairs the Cable Television & Broadband Committee overseeing WCTV), and

Commissioner Kevin Costley each testified that they had no knowledge of any county funds allocated to WCTV or to Ms. Haffner being unaccounted for. Several of those witnesses—Mr. Owen, Mr. Franklin, and Mr. Costley—were called to testify by McFarland.

106. Underscoring Commissioner McFarland's knowledge that his statements were false, Ms. Horton also testified that months prior, McFarland had requested an accounting of WCTV's budget from the Finance Department but had never returned for the documents. The Finance Department is approximately 15-feet from the County Commission's chambers and is accessible to McFarland on any business day.

107. Commissioner McFarland in his own testimony admitted that over the six months at issue in the Order of Protection hearing, he did not at any time exercise any of the government mechanisms available to him to investigate missing funds. He did not raise the issue at a County Commission meeting, at a Cable & Broadband Subcommittee meeting, or request an investigation. McFarland admitted that he never obtained a copy of the WCTV audit he had requested from Finance.

108. While it was not entered into evidence at that hearing, the Tennessee Comptroller of the Treasury in its Annual Financial Report for Wilson County for the financial year ending June 30, 2025 similarly reported no issues with the WCTV budget.[5]

109. On April 14, 2026, relying in part on McFarland's testimony, the Circuit Court overturned the Order of Protection that Ms. Haffner had previously been granted.

110. On April 19, 2026, Commissioner McFarland through his defense attorney Donnavon Vasek issued a press release repeating the false allegation. The release stated:

> "The accusations of harassment and stalking were simply untrue. My communications were solely intended to determine the status of $60,000 in television equipment I helped procure for the benefit of Wilson County Television,

[5] Available at https://comptroller.tn.gov/content/dam/cot/la/documents/county/2025/FY25WilsonAFR.pdf.

which benefits the citizens of Wilson County. To this day, I have no idea whether that equipment was ever purchased and, if so, where is it and has it been installed?"

111. Commissioner McFarland, either personally or through his counsel, contemporaneously disseminated the press release to journalists, including but not limited to *Nashville Banner* reporter/producer Demetria Kalodimos and the WKRN-TV newsroom.

112. Commissioner McFarland personally disseminated copies of the press release, printed on bright yellow paper, inside the County Commission meeting room immediately prior to the April 20, 2026, Wilson County Commission meeting. This dissemination included McFarland placing a copy on each commissioner's assigned desk.

113. Commissioner McFarland's statements were knowingly false and were intended to damage Ms. Haffner's personal and professional reputation.

### H. The Discriminatory and Fraudulent Conduct of Wilson County and Commissioner McFarland Caused Injury to Ms. Haffner.

114. Defendant Wilson County engaged in a continuing course of gender-based discriminatory conduct beginning in November 2024, when Ms. Haffner first formally reported Commissioner McFarland's conduct to Mayor Hutto, and continuing through the next two years as Wilson County and its agents ignored mounting evidence, corroborated by numerous county employees, that McFarland was a danger to Ms. Haffner's safety and right to work. Even after it acknowledged McFarland's wrongdoing, Wilson County through its agents made fraudulent statements denying its own legal responsibilities and countenancing McFarland's unlawful behavior. These actions were not isolated incidents, but component parts of a persistent hostile work environment that altered the terms and conditions of Ms. Haffner's employment with Wilson County, making clear to Ms. Haffner that her employment could only continue on the condition that she accept Commissioner McFarland's routine abuses of power, until her working conditions became so intolerable that she was compelled to resign. At least one of the acts contributing to

that hostile work environment took place within the 300 days preceding Ms. Haffner's EEOC charge, thus rendering the entire course of Defendants' unlawful conduct timely under Title VII.

115. Defendants' months of committing, countenancing, and tolerating discrimination caused Ms. Haffner stress and anxiety, physical illness, humiliation, damage to a hard-earned professional reputation, loss of workplace protections, violation of equal protection rights, and other harms. The failures of nearly every government actor in Wilson County—from her supervisor Mayor Randall Hutto and County Attorney Michael Jennings to the District Attorney and Police, and down to the misleading advice of judicial officers—compounded Ms. Haffner's distress by making clear that when it came to Commissioner McFarland's abuse, she was on her own.

116. Defendant's constructive discharge of Ms. Haffner also caused her to lose substantial future income and other privileges and benefits of employment.

117. Defendants' misrepresentations that Wilson County had no legal authority or duty to intervene to correct McFarland's behavior were intended to, and did in fact, prevent Ms. Haffner from discovering Defendants' violations of her legal rights. Because Wilson County through its agents concealed its wrongful conduct from Ms. Haffner, she did not discover and could not through the exercise of reasonable diligence have discovered the extent of Defendant's wrongful conduct injured her until the last acts of continued discriminatory conduct described herein.

118. Ms. Haffner requests relief as hereinafter described.

## CAUSES OF ACTION

### COUNT I - Hostile Work Environment
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended)
### Defendant Wilson County

119. Plaintiff incorporates the preceding paragraphs as alleged above.

120. Defendant Wilson County is liable for the hostile work environment Plaintiff suffered on the basis of sex discrimination.

121. Wilson County is a corporation and political subdivision of the State of Tennessee, organized and existing under and by virtue of the laws and Constitution of the State of Tennessee, and subject to civil actions.

122. During all relevant times, Defendant Wilson County was Ms. Haffner's employer within the meaning of all applicable statutes and employed more than five hundred (500) people.

123. At all relevant times, Mayor Randall Hutto, County Attorney Michael Jennings, Sheriff Robert C. Bryan, and Mike Owen were the employees and agents of Wilson County as described above in Paragraphs 11 to 28.

124. At all relevant times, Mayor Randall Hutto was Plaintiff's "supervisor" within the meaning of Title VII.

125. Commissioner Jerry McFarland at all times relevant to this complaint claimed to possess the actual or apparent authority to take tangible employment actions against Ms. Haffner; possessed or acquired the actual or apparent authority to take tangible employment actions against Ms. Haffner through Wilson County's delegation, ratification, and/or acquiescence; and/or in the alternative, acted as a third party.

126. At all relevant times Plaintiff belonged to a protected class; was subject to unwelcome harassment based on her sex; and suffered harassment sufficiently severe and/or pervasive to alter the conditions of her employment and create an abusive working environment.

127. The intolerable conditions caused and/or permitted by Defendants stemmed from sex-based harassment, discrimination, and/or retaliation which itself violated Title VII of the Civil Rights Act of 1964. Those conditions include but are not limited to:

a. stalking, harassing, and threatening Plaintiff on the basis of her sex;

b. denigrating Plaintiff's abilities and job performance on the basis of her sex;

c. objectifying and unequally scrutinizing Plaintiff's appearance on the basis of her sex;

d. failing to take reasonable and adequate steps to prevent and/or correct Plaintiff's complaints of gender discrimination, even when it was substantially certain such discrimination would continue;

e. misadvising Plaintiff as to her lawful workplace protections;

f. discouraging, obstructing, and/or impeding Plaintiff from exercising her legal workplace protections;

g. obstructing Plaintiff's ability to report criminal conduct, including violations of a valid Order of Protection, at her workplace;

h. retaliating against Plaintiff after she engaged in protected activity to report, and/or protect herself from, workplace gender discrimination and injury;

128. Defendant Wilson County knew or should have known about the harassment and failed to act.

129. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by Title VII.

130. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered and is entitled to recover compensatory damages, costs, and reasonable attorneys' fees as prescribed under 42 U.S.C. §§ 1981a, 1988.

131. Ms. Haffner filed timely charges with the EEOC and received a Notice of Right to Sue on August 20, 2026, thus exhausting her administrative remedies.

**COUNT II - Hostile Work Environment**
**(Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*)**
**Defendant Wilson County**

132. Plaintiff incorporates the preceding paragraphs as alleged above.

133. Defendant Wilson County is liable for the hostile work environment Plaintiff suffered on the basis of sex discrimination.

134. Wilson County is a corporation and political subdivision of the State of Tennessee, organized and existing under and by virtue of the laws and Constitution of the State of Tennessee, and subject to civil actions.

135. During all relevant times, Defendant Wilson County was Ms. Haffner's employer within the meaning of all applicable statutes and employed more than five hundred (500) people.

136. At all relevant times, Mayor Randall Hutto, County Attorney Michael Jennings, Sheriff Robert C. Bryan, and Mike Owen were the employees and agents of Wilson County as described above in Paragraphs 14 to 26.

137. At all relevant times, Mayor Randall Hutto was Plaintiff's "supervisor" within the meaning of Title VII.

138. Commissioner Jerry McFarland at all times relevant to this complaint claimed to possess the actual or apparent authority to take tangible employment actions against Ms. Haffner; possessed or acquired the actual or apparent authority to take tangible employment actions against Ms. Haffner through Wilson County's delegation, ratification, and/or acquiescence; and/or in the alternative, acted as a third party.

139. At all relevant times Plaintiff belonged to a protected class; was subject to unwelcome harassment based on her sex; and suffered harassment sufficiently severe and/or pervasive to alter the conditions of her employment and create an abusive working environment.

140. The intolerable conditions caused and/or permitted by Defendants stemmed from sex-based harassment, discrimination, and/or retaliation which itself violated Title VII of the Civil Rights Act of 1964. Those conditions include but are not limited to:

a. stalking, harassing, and threatening Plaintiff on the basis of her sex;

b. denigrating Plaintiff's abilities and job performance on the basis of her sex;

c. objectifying and unequally scrutinizing Plaintiff's appearance on the basis of her sex;

d. failing to take reasonable and adequate steps to prevent and/or correct Plaintiff's complaints of gender discrimination, even when it was substantially certain such discrimination would continue;

e. misadvising Plaintiff as to her lawful workplace protections;

f. discouraging, obstructing, and/or impeding Plaintiff from exercising her legal workplace protections;

g. obstructing Plaintiff's ability to report criminal conduct, including violations of a valid Order of Protection, at her workplace;

h. retaliating against Plaintiff after she engaged in protected activity to report, and/or protect herself from, workplace gender discrimination and injury;

141. Defendant Wilson County knew or should have known about the harassment and failed to act.

142. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the THRA.

143. As a direct and proximate result of the acts and omissions of Wilson County, Plaintiff suffered and is entitled to recover economic and non-economic damages in an amount to be determined by a jury.

144. Ms. Haffner filed timely charges with the EEOC and received a Notice of Right to Sue on August 20, 2026, thus exhausting her administrative remedies.

**COUNT III - Retaliation**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*)**
**Defendant Wilson County**

145. Plaintiff incorporates the preceding paragraphs as alleged above.

146. Defendant Wilson County is liable for the retaliation Plaintiff suffered on the basis of sex discrimination.

147. Wilson County is a corporation and political subdivision of the State of Tennessee, organized and existing under and by virtue of the laws and Constitution of the State of Tennessee, and subject to civil actions.

148. During all relevant times, Defendant Wilson County was Plaintiff's employer within the meaning of all applicable statutes and employed more than five hundred (500) people.

149. At all relevant times, Mayor Randall Hutto, County Attorney Michael Jennings, Sheriff Robert C. Bryan, and Mike Owen were the employees and agents of Wilson County as described above in Paragraphs 11 to 26.

150. At all relevant times, Mayor Randall Hutto was Plaintiff's "supervisor" within the meaning of Title VII.

151. Commissioner Jerry McFarland at all times relevant to this complaint claimed to possess the actual or apparent authority to take tangible employment actions against Ms. Haffner; possessed or acquired the actual or apparent authority to take tangible employment actions against Ms. Haffner through Wilson County's delegation, ratification, and/or acquiescence; and/or in the alternative, acted as a third party.

152. At all relevant times Plaintiff belonged to a protected class.

153. Ms. Haffner engaged in protected activities, including complaining of unlawful workplace discrimination to her employer, petitioning for an Order of Protection, and participating in an EEO process by complaining of discriminatory treatment.

154. Defendant Wilson County took adverse actions against Ms. Haffner with the purpose of retaliating against her because of her participation in protected activities, including:

a. stalking, harassing, and threatening Ms. Haffner;

b. reducing Ms. Haffner' professional role, decision-making authority, and influence at WCTV;

c. imposing new work and reporting requirements on Ms. Haffner;

d. discouraging her from exercising her legal rights and misinforming her as to those rights;

e. failing to take reasonable and adequate steps to prevent and correct Ms. Haffner' complaints of gender discrimination;

f. denying Ms. Haffner's request for investigation and remediation of gender discrimination;

g. obstructing Plaintiff's ability to report criminal violations of a valid Order of Protection in her workplace.

155. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by Title VII.

156. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered and is entitled to recover compensatory damages, costs, and reasonable attorneys' fees as prescribed under 42 U.S.C. §§ 1981a, 1988.

157. Ms. Haffner filed timely charges with the EEOC and received a Notice of Right to Sue on August 20, 2026 thus exhausting her administrative remedies.

**COUNT IV - Retaliation**
**(Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*)**
**Defendant Wilson County**

158. Plaintiff incorporates the preceding paragraphs as alleged above.

159. Defendant Wilson County is liable for the retaliation Plaintiff suffered on the basis of sex discrimination.

160. Wilson County is a corporation and political subdivision of the State of Tennessee, organized and existing under and by virtue of the laws and Constitution of the State of Tennessee, and subject to civil actions.

161. During all relevant times, Defendant Wilson County was Plaintiff's employer within the meaning of all applicable statutes, and employed more than five hundred (500) people.

162. At all relevant times, Mayor Randall Hutto, County Attorney Michael Jennings, Sheriff Robert C. Bryan, and Mike Owen were the employees and agents of Wilson County as described above in Paragraphs 11 to 26.

163. At all relevant times, Mayor Randall Hutto was Plaintiff's "supervisor" within the meaning of Title VII.

164. Commissioner Jerry McFarland at all times relevant to this complaint claimed to possess the actual or apparent authority to take tangible employment actions against Ms. Haffner; possessed or acquired the actual or apparent authority to take tangible employment actions against Ms. Haffner through Wilson County's delegation, ratification, and/or acquiescence; and/or in the alternative, acted as a third party.

165. At all relevant times Plaintiff belonged to a protected class.

166. Ms. Haffner engaged in protected activities, including complaining of unlawful workplace discrimination to her employer, petitioning for an Order of Protection, and participating in an EEO process by complaining of discriminatory treatment.

167. Defendant Wilson County took adverse actions against Ms. Haffner with the purpose of retaliating against her because of her participation in protected activities, including:

a. stalking, harassing, and threatening Ms. Haffner;

b. reducing Ms. Haffner' professional role, decision-making authority, and influence at WCTV;

c. imposing new work and reporting requirements on Ms. Haffner;

d. discouraging her from exercising her legal rights and misinforming her as to those rights;

e. failing to take reasonable and adequate steps to prevent and correct Ms. Haffner' complaints of gender discrimination;

f. denying Ms. Haffner's request for investigation and remediation of gender discrimination;

g. obstructing Plaintiff's ability to report criminal violations of a valid Order of Protection in her workplace.

168. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the THRA.

169. Wilson County is vicariously liable for the discriminatory acts of its agents through the explicit and implicit delegation, permission, approval, acquiescence, and/or ratification of those acts.

170. As a direct and proximate result of the acts and omissions of Wilson County, Plaintiff suffered and is entitled to recover economic and non-economic damages in an amount to be determined by a jury.

171. Ms. Haffner filed timely charges with the EEOC and received a Notice of Right to Sue on August 20, 2026 thus exhausting her administrative remedies.

**COUNT V - Constructive Discharge**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*)**
**Defendant Wilson County**

172. Plaintiff incorporates the preceding paragraphs as alleged above.

173. Defendant Wilson County is liable for negligently, recklessly, or intentionally creating and/or permitting working conditions so intolerable that a reasonable person in Ms. Haffner's position would feel compelled to resign, and which did in fact cause Ms. Haffner to resign her employment.

174. Wilson County is a corporation and political subdivision of the State of Tennessee, organized and existing under and by virtue of the laws and Constitution of the State of Tennessee, and subject to civil actions.

175. During all relevant times, Defendant Wilson County was Plaintiff's employer within the meaning of all applicable statutes and employed more than five hundred (500) people.

176. At all relevant times, Mayor Randall Hutto, County Attorney Michael Jennings, Sheriff Robert C. Bryan, and Mike Owen were the employees and agents of Wilson County as described above in Paragraphs 11 to 26.

177. At all relevant times, Mayor Randall Hutto was Plaintiff's "supervisor" within the meaning of Title VII.

178. Commissioner Jerry McFarland at all times relevant to this complaint claimed to possess the actual or apparent authority to take tangible employment actions against Ms. Haffner; possessed or acquired the actual or apparent authority to take tangible employment actions against Ms. Haffner through Wilson County's delegation, ratification, and/or acquiescence; and/or in the alternative, acted as a third party.

179. The conduct for which Wilson County is liable includes, but is not limited to:

a. subjecting Ms. Haffner to pervasive sexist language and behavior from a male County Commissioner as a condition of her employment;

b. subjecting Ms. Haffner to stalking, harassment, and threats from a male County Commissioner as a condition of her employment;

c. subjecting Ms. Haffner to demeaning and unequal scrutiny of her physical appearance by a male county official as a condition of her employment

d. reducing Ms. Haffner' professional role, decision-making authority, and influence at WCTV;

e. discouraging Ms. Haffner from exercising her legal rights and misinforming her as to those rights;

f. failing to take reasonable and adequate steps to investigate, prevent, and/or correct Ms. Haffner' complaints of gender discrimination;

g. obstructing Ms. Haffner's ability to report criminal violations of a valid Order of Protection in her workplace;

h. retaliating against Ms. Haffner after she engaged in protected activity to report, and/or protect herself from, workplace gender discrimination and injury, including defaming her reputation.

180. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by Title VII.

181. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered and is entitled to recover compensatory damages, costs, and reasonable attorneys' fees as prescribed under 42 U.S.C. §§ 1981a, 1988.

182. Ms. Haffner filed timely charges with the EEOC and received a Notice of Right to Sue on August 20, 2026 thus exhausting her administrative remedies.

**COUNT VI - Constructive Discharge**
**(Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*)**
**Defendant Wilson County**

183. Plaintiff incorporates the preceding paragraphs as alleged above.

184. Defendant Wilson County is liable for negligently, recklessly, or intentionally creating and/or permitting working conditions so intolerable that a reasonable person in Ms.

Haffner's position would feel compelled to resign, and which did in fact cause Ms. Haffner to resign her employment.

185. Wilson County is a corporation and political subdivision of the State of Tennessee, organized and existing under and by virtue of the laws and Constitution of the State of Tennessee, and subject to civil actions.

186. During all relevant times, Defendant Wilson County was Ms. Haffner's employer within the meaning of all applicable statutes, and employed more than five hundred (500) people.

187. During all relevant times, Defendant Wilson County was Plaintiff's employer within the meaning of all applicable statutes, and employed more than five hundred (500) people.

188. At all relevant times, Mayor Randall Hutto, County Attorney Michael Jennings, Sheriff Robert C. Bryan, and Mike Owen were the employees and agents of Wilson County as described above in Paragraphs 11 to 26.

189. At all relevant times, Mayor Randall Hutto was Plaintiff's "supervisor" within the meaning of Title VII.

190. Commissioner Jerry McFarland at all times relevant to this complaint claimed to possess the actual or apparent authority to take tangible employment actions against Ms. Haffner; possessed or acquired the actual or apparent authority to take tangible employment actions against Ms. Haffner through Wilson County's delegation, ratification, and/or acquiescence; and/or in the alternative, acted as a third party.

191. The conduct for which Wilson County is liable includes, but is not limited to:

a. subjecting Ms. Haffner to pervasive sexist language and behavior from a male County Commissioner as a condition of her employment;

b. subjecting Ms. Haffner to stalking, harassment, and threats from a male County Commissioner as a condition of her employment;

c. subjecting Ms. Haffner to demeaning and unequal scrutiny of her physical appearance by a male county official as a condition of her employment

d. reducing Ms. Haffner' professional role, decision-making authority, and influence at WCTV;

e. discouraging Ms. Haffner from exercising her legal rights and misinforming her as to those rights;

f. failing to take reasonable and adequate steps to investigate, prevent, and/or correct Ms. Haffner' complaints of gender discrimination;

g. obstructing Ms. Haffner's ability to report criminal violations of a valid Order of Protection in her workplace;

h. retaliating against Ms. Haffner after she engaged in protected activity to report, and/or protect herself from, workplace gender discrimination and injury, including defaming her reputation.

192. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the THRA.

193. Wilson County is vicariously liable for the discriminatory acts of its agents through the explicit and implicit delegation, permission, approval, acquiescence, and/or ratification of those acts.

194. As a direct and proximate result of the acts and omissions of Wilson County, Plaintiff suffered economic and non-economic damages in an amount to be determined by a jury.

195. Ms. Haffner filed timely charges with the EEOC and received a Notice of Right to Sue on August 20, 2026, thus exhausting her administrative remedies.

**COUNT VII - Deprivation of Right (Equal Protection)**
**(42 U.S.C. § 1983)**
**Defendant Commissioner Jerry McFarland in his individual capacity**

196. Ms. Haffner incorporates the preceding paragraphs as alleged above.

197. At all relevant times, Commissioner Jerry McFarland was acting under color of state law and within the scope of his duties, powers, and authorities as an elected official of Wilson County government.

198. Commissioner McFarland's treatment of Plaintiff was objectively unreasonable. No reasonable county commissioner could have thought that McFarland's treatment of Plaintiff was justified, reasonable, lawful, or within his discretionary authority.

199. Commissioner McFarland is not entitled to absolute or qualified immunity.

200. Defendant Commissioner McFarland's sexual harassment of Plaintiff included:

a. subjecting Ms. Haffner to pervasive sexist language and behavior in the workplace;

b. subjecting Ms. Haffner to stalking, harassment, and threats in the workplace;

c. subjecting Ms. Haffner to demeaning and unequal scrutiny of her physical appearance in the workplace;

d. demeaning Ms. Haffner's professional qualifications, skill, productivity on the basis of sex;

e. retaliating against Ms. Haffner after she engaged in protected activity to report, and/or protect herself from, workplace gender discrimination and injury, including defaming her reputation.

201. Commissioner McFarland's actions amounted to intentional discrimination in violation of Plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause.

202. As a direct and proximate result of Commissioner McFarland's actions, Plaintiff suffered numerous violations of her Equal Protection rights under the Fourteenth Amendment.

203. As a direct and proximate result of the acts and omissions of Commissioner McFarland, Plaintiff is entitled to recovery of compensatory, punitive, and nominal damages as a matter of federal common law and in an amount to be determined by a jury; as well as costs and reasonable attorneys' fees as prescribed under 42 U.S.C. §§ 1988.

**COUNT VIII - Intentional Infliction of Emotional Distress**
**(Tennessee Common Law)**
**Defendant Commissioner Jerry McFarland in his individual capacity**

204. Ms. Haffner incorporates the preceding paragraphs as alleged above.

205. Commissioner McFarland is individually liable under Tennessee common law for intentionally and/or recklessly engaging in extreme and outrageous conduct toward Plaintiff.

206. This conduct includes, but is not limited to:

a. Incessantly contacting, approaching, following, watching, monitoring, intimidating, threatening, and Plaintiff placing in fear of serious bodily injury—including while under a valid Order of Protection and including the threatened use of a firearm—in a manner analogous to the Tennessee criminal offenses of harassment, stalking, and aggravated stalking;

b. Obstructing and/or interfering with Plaintiff's ability to seek relief from such conduct through her employer through the use of threats, intimidation, and personal political influence;

c. Obstructing and/or interfering with Plaintiff's ability to seek relief from such conduct through the assistance of law enforcement;

d. Repeatedly and publicly defaming Plaintiff after she engaged in protected activity to report, and/or protect herself from, workplace gender discrimination and injury.

207. Commissioner McFarland's conduct as described above directly and proximately caused Plaintiff to experience serious mental and emotional injury, including anxiety, depression, insomnia, and panic attacks.

208. Commissioner McFarland is a proper defendant under the Government Tort Liability Act. *See* Tenn. Code Ann. § 29-20-102 (defining "employee" to include elected officials and "government entity" to include county governments); Tenn. Code Ann. § 29-20-205 (preserving immunity for government entities against suits arising out of "abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights … .").

209. Ms. Haffner is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**COUNT IX - Defamation**
**(Tennessee Common Law)**
**Defendant Jerry McFarland in his personal capacity**

210. Ms. Haffner incorporates the preceding paragraphs as alleged above.

211. Defendant Commissioner McFarland is liable for the false statements he published regarding Plaintiff, and which he published with knowledge that they were false and/or defamatory; and/or with reckless disregard for their truth; and/or after having negligently failed to ascertain their truth.

212. This conduct includes, but is not limited to:

a. Commissioner McFarland gave false and libelous testimony during the Order of Protection hearing of February 25-26, 2026, in which he claimed that $60,000 in public funds allotted to the WCTV budget and overseen by Ms. Haffner were lost or unaccounted for, and that Ms. Haffner would not provide him an accounting of such funds;

b. Commissioner McFarland on April 19, 2026, repeated the false allegation in a slanderous printed press release which he disseminated to statewide media outlets and, on information and belief, to other as-yet unidentified third parties;

c. Commissioner McFarland on April 20, 2026, and within the Wilson County Commission Room, disseminated copies of the slanderous press release to his fellow county commissioners—and upon information and belief, to as-yet unidentified third parties.

213. As a direct and proximate result of the acts and omissions described in this Count, Plaintiff has suffered harm to her personal and professional reputation, severe emotional distress, loss of future wages and earnings, and other damages. Ms. Haffner is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**PRAYER FOR RELIEF**

214. WHEREFORE, Ms. Haffner prays for relief as follows:

215. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII and the THRA;

216. All damages sustained as a result of Defendants' conduct, including economic damages such as back pay, front pay, and non-economic damages including for emotional distress, humiliation, embarrassment, and anguish, according to proof;

217. Exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and to deter future conduct;

218. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

219. Pre-judgment and post-judgment interest, as provided by law; and

220. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Ms. Haffner demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 22, 2026

Respectfully submitted,

/s/ David O. Kieley
John T. Spragens (BPR # 031445)
David O. Kieley (BPR # 031188)
Spragens Law PLC
915 Rep. John Lewis Way South, Suite 100
Nashville, TN 37203
T: 615-983-8900
john@spragenslaw.com
dave@spragenslaw.com

*Attorneys for Plaintiff Kristy Haffner*